IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WENDELL LAMONT PARKER, | : | CIVIL NO. 3:CV-09-0722 |
| Petitioner | : | |
| | : | (Judge Munley) |
| v. | : | |
| | : | |
| THOMAS CORBETT, | : | |
| Respondent | : | |

## MEMORANDUM

Petitioner Wendell Lamont Parker ("Parker") initiated this action with the filing of a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Doc. 1.) On October 10, 2009, he amended the petition by adding an additional claim. (Doc. 25.) He challenges the judgment of sentence entered on August 29, 2007, in the Court of Common Pleas of York County for Criminal Attempt to Deliver a Non-Controlled Substance, Possession of Drug Paraphernalia, and False Identification to Law enforcement Authorities. The petition and amended petition are ripe for disposition and, for the reasons that follow, will be denied.

I. **Background & Procedural History**

The factual background is primarily extracted from the September 10, 2008 Superior Court of Pennsylvania opinion affirming the entry of judgment entered in the Court of Common Pleas of York County on August 29, 2007. (Doc. 2-2, at pp. 2-4.) The superior

court described the trial court proceedings as follows:

> On January 27, 2007, at about 11:47 p.m., a Springettsbury Township Police Officer pulled Parker over because he noticed that the vehicle had a malfunctioning right brake light. When stopped behind the vehicle, the officer noticed that there was a passenger in the car and that the driver, Parker, "began to reach down, dipping his shoulders right and left." N.T., 7/10/07, at 37-38. This movement caused the officer to believe that the driver might have been concealing a weapon. Id. As the officer would eventually find out, Parker gave the officer a false name, social security number and birthdate.
>
> After Parker was unable to produce identification, the officer ordered him out of the car so he could pat him down to check for the presence of weapons. During the pat down, the officer felt two plastic bags with a "hard chunky substance" in Parker's pants pocket. Id. at 38. Based on the officer's experience, he believed the objects felt to be cocaine and seized them. During the search incident to arrest, the officer also found a smoking device to smoke crack cocaine.
>
> While the smoking device did test positive for crack cocaine residue, the hard chunky substance also seized was actually candle wax. After the officer advised him of his rights, Parker stated, "Man, that ain't real coke, it's candle wax . . . I ain't going to lie, I was going to sell it if the opportunity presented itself. I got a really bad habit." Id. at 44. Parker was charged with various crimes arising from this incident.
>
> At the hearing on July 10, 2007, the trial court denied Parker's motion for suppression of the evidence obtained during the pat down. The matter proceeded to trial on the same date. The arresting officer testified that he determined Parker's true identity from another jurisdiction "who had contact with him at one time." Id. at 45. Due to this remark, defense counsel requested a mistrial. The trial court denied this request, but provided the jury with a cautionary instruction that they cannot imply prior criminal conduct from the officer's statement. Id. at 47. The jury convicted Parker of criminal contempt to deliver a noncontrolled or counterfeit substance, possession of drug paraphernalia, and false identification to law enforcement. [footnotes omitted.]

2

> On August 29, 2007, the trial court sentenced Parker to an aggregate sentence of 2 ½ to 5 years incarceration, consecutive to a state parole violation. (Footnotes omitted.)

(Doc. 2-2, at 2-4.) He appealed to the Pennsylvania Superior Court raising, *inter alia*, "[w]hether the trial court erred in denying defendant's Motion to Suppress when the evidence used against him was seized following an unlawful pat-down search of his person that was not supported by probable cause or reasonable suspicion of ongoing criminal activity nor that the defendant was armed and dangerous and the search exceeded its permissible scope[?]" (Doc. 2-2, at 4.) On September 10, 2008, the superior court affirmed the judgment of sentence entered on August 29, 2007. Parker then filed a petition for allocatur with the Supreme Court of Pennsylvania, which was denied on February 26, 2009. (Doc. 1, at 2.)

He filed the instant petition on April 17, 2009, rasing the following issues:

1. Was there a "Terry" frisk conducted in accordance with Parker's Fourth Amendment rights? (Doc. 1, at 5.)

2. Did the arresting officer exceed the parameters of Terry? (Doc. 1, at 6.)

3. Was the contraband in Parker's pocket immediately apparent such that the arresting officer had authority to seize it? (Doc. 1, at 8.)

(Doc. 1.) On October 10, 2009, he filed an amended petition arguing that the state courts denied him an opportunity for full and fair litigation of his Fourth Amendment claims by failing to consider his arguments during his suppression hearing and his appeal to the

3

superior court.

## II. Standards of Review

A habeas corpus petition pursuant to 28 U.S.C. § 2254 is the proper mechanism for a prisoner to challenge the "fact or duration" of his confinement. Preiser v. Rodriguez, 411 U.S. 475, 498-499 (1973). "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." Estelle v. McGuire, 502 U.S. 62, 67-8 (1991). Rather, federal habeas review is restricted to claims based "on the ground that [petitioner] is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); Estelle, 502 U.S. at 67-8; see also Pulley v. Harris, 465 U.S. 37, 41 (1984); Johnson v. Rosemeyer, 117 F.3d 104 (3d Cir. 1997).

Before a federal court can review the merits of a state prisoner's habeas petition, it must determine whether the petitioner has met the requirements of exhaustion. Relief cannot be granted unless all available state remedies have been exhausted, or there is an absence of available state corrective process, or circumstances exist that render such process ineffective to protect the rights of the applicant. See 28 U.S.C. § 2254(b)(1). The exhaustion requirement is grounded on principles of comity in order to ensure that state courts have the initial opportunity to review federal constitutional challenges to state convictions. See Werts v. Vaughn, 228 F.3d 178, 192 (3d Cir. 2000).

4

Once a court is satisfied that a merits review of a claim is warranted, as is the case here, section 2254(d) of Title 28 of the United States Code provides, in pertinent part, that an application for a writ of habeas corpus premised on a claim previously adjudicated on the merits shall not be granted unless the decision is contrary to, or involves an unreasonable application of, clearly established federal law, or is based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. 2254(d). AEDPA thus limits a federal court's authority to grant habeas relief when a state court has previously considered and rejected the federal claim on the merits.

To establish that the decision was contrary to federal law, "it is not sufficient for the petitioner to show merely that his interpretation of supreme court precedent is more plausible than the state courts; rather, the petitioner must demonstrate that precedent *requires* the contrary outcome." Matteo v. Superintendent, 171 F.3d 877, 888 (3d Cir. 1999) (emphasis in original). " 'Under the 'unreasonable application' clause [of § 2254(d)], a federal habeas court may grant the writ if the state court identifies the correct legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.' Jermyn v. Horn, 266 F.3d 257, 281-82 (3d Cir.2001) (quoting Williams v. Taylor, 529 U.S. 362, 407, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000)). In determining whether the state court unreasonably applied Supreme Court precedent, the question is

5

whether the state court's application of federal law was objectively unreasonable, not whether the application was, in the judgment of the federal habeas court, erroneous or incorrect. Id. at 282." Siehl v. Grace, 561 F.3d 189, 195 (3d Cir. 2009).

Further, under 28 U.S.C. § 2254(e)(1), a federal court is required to presume that a state court's findings of fact are correct. A petitioner may only rebut this presumption with "clear and convincing evidence" of the state court's error. Miller-El v. Cockrell, 537 U.S. 322, 341 (2003) (stating that the clear and convincing standard in § 2254(e)(1) applies to factual issues, whereas the unreasonable application standard of § 2254(d)(2) applies to factual decisions) Matteo v. Superintendent, 171 F.3d at 888; Thomas v. Varner, 428 F.3d 492, 497-98 (3d Cir. 2005). This presumption of correctness applies to both explicit and implicit findings of fact. Campbell v. Vaughn, 209 F.3d 280, 286 (3d Cir. 2000). Consequently, a habeas petitioner "must clear a high hurdle before a federal court will set aside any of the state court's factual findings." Mastracchio v. Vose, 274 F.3d 590, 597-98 (1st Cir. 2001).

Like the "unreasonable application" prong of paragraph (1), a factual determination should be adjudged "unreasonable" under paragraph (2) only if the court finds that a rational jurist could not reach the same finding on the basis of the evidence in the record. 28 U.S.C. § 2254(d)(2); Porter v. Horn, 276 F. Supp 2d 278, 296 (E.D. Pa. 2003); see also Torres v. Prunty, 223 F.3d 1103, 1107-08 (9th Cir. 2000); cf. Jackson v. Virginia, 443 U.S. 307, 316 (1979). Only when the finding lacks evidentiary support in the state court record or is plainly

6

controverted by evidence therein should the federal habeas court overturn a state court's factual determination. Porter, 276 F. Supp 2d at 296; see also Williams, 529 U.S. at 408-09.

## III. Discussion

Parker contends that the state courts decision that the Terry stop and frisk and subsequent pat-down was in accordance with Fourth Amendment precedent was contrary to or involved an unreasonable application of clearly established federal law and that the state courts failed to consider his arguments which were supported by United States Supreme Court cases and Pennsylvania Supreme and Appellate Court case law. (Docs. 1, 25.) Accordingly, these claims will be evaluated under § 2254(d)(1) which requires him to demonstrate that the state court proceedings "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

### A. Terry Search

The Pennsylvania Superior Court extensively covered the first and second issues of whether the arresting officer conducted the "Terry" frisk in accordance with Parker's Fourth Amendment rights in the following manner:

> ¶ 7 In his first issue on appeal, Parker claims that the evidence seized during his traffic stop should have been suppressed by the trial court. He argues that the police officer unlawfully detained him without reasonable suspicion, unlawfully searched him without the proper suspicion that he was armed and dangerous, and unlawfully seized items in violation of the plain feel doctrine.
>
> ¶ 8 Our standard of review for suppression matters is well established:

7

> [W]e must determine whether the factual findings [of the suppression court] are supported by the record and, assuming there is support in the record, we are bound by the facts and may reverse if the legal conclusions drawn from those facts are in error.

Commonwealth v. Pakacki, 587 Pa. 511, 516-517, 901 A.2d 983, 986 (2006) (quotation omitted).

¶ 9 When a police officer lawfully stops a motorist for a violation of the Pennsylvania Motor Vehicle Code, the officer is permitted to ask the driver to step out of the vehicle "as a matter of right." Commonwealth v. Wilson, 927 A.2d 279, 284 (Pa. Super. 2007), citing, Pennsylvania v. Mimms, 434 U.S. 106 (1977). During this investigatory stop, the officer can pat-down the driver "when the officer believes, based on specific and articulable facts, that the individual is armed and dangerous." Commonwealth v. Stevenson, 894 A.2d 759, 772 (Pa. Super. 2006), appeal denied, 591 Pa. 691, 917 A.2d 846 (2007), citing, Terry v. Ohio, 392 U.S. 1 (1968); Commonwealth v. Hicks, 434 Pa. 153, 253 A.2d 276 (1969); Commonwealth v. Robinson, 600 A.2d 957, 959 (1991), appeal denied, 533 Pa. 599, 617 A.2d 1273 (1992). Such pat-downs, which are permissible "without a warrant and on the basis of reasonable suspicion less than probable cause, must always be strictly limited to that which is necessary for the discovery of weapons" that might present a danger to the officer or those nearby. Commonwealth v. Ingram, 814 A.2d 264, 269 (Pa. Super. 2002) (quotation omitted), appeal denied, 573 Pa. 671, 821 A.2d 586 (2003). When assessing the validity of a pat-down, "we examine the totality of the circumstances... giving due consideration to the reasonable inferences that the officer can draw from the facts in light of his experience, *while disregarding any unparticularized suspicion or hunch.*" Wilson, 927 A.2d at 284 (citation omitted).

¶ 10 If it becomes clear to the police officer during the pat-down that the suspect does not have any weapons on his person, the plain feel doctrine exists as an exception to allow for the seizure of "non-threatening contraband" when the officer feels an object "whose mass or contour makes its criminal character immediately apparent." Id. at 287 (quotation omitted); Pakacki, 587 Pa. At 521, 901 A.2d at 989 (citation omitted). The contraband is "immediately apparent" when "the officer readily perceives without further exploration or searching, that what he is feeling is contraband." Id. The object cannot be seized if, "after feeling the object, the officer lacks probable cause to believe that the object is contraband without conducting some further search." Id.

8

¶ 11 The police officer lawfully pulled Parker over because of a malfunctioning brake light; therefore he also had the right to ask him to step out of the vehicle. Guidance is provided in the Mimms case, where the defendant, who was driving with expired license tags, was lawfully stopped and asked to exit the vehicle because he was also in violation of the Pennsylvania Motor Vehicle Code. The lawfulness of the investigatory stop in both Mimms and this case dispels any "question about the propriety of the initial restrictions on respondent's freedom of movement." Mimms, 434 U.S. at 109. Therefore, the officer lawfully detained Parker and requested that he step out of the car.

¶ 12 During the suppression hearing, the officer provided specific facts explaining why he had reason to believe Parker was armed and dangerous, which he observed immediately after he stopped and pulled behind him. The officer explained his reasons for patting down Parker as follows:

> Q: What was your original reason for patting him down?
>
> A. The furtive movements I observed upon stopping him, reaching down to his right and to his left.
>
> Q. Why would you pat him down because of those movements?
>
> A. Based on his movements, my safety in my opinion was in jeopardy, because I didn't know if he was trying to get a weapon or not. I wanted to be sure he did not possess a weapon, so we were both safe on the traffic stop.

N.T., 7/10/07, at 7. At the suppression hearing, the officer also described Parker's movements as "shoulders dipping from side to side as if he was trying to retrieve something." Id. at 12.

¶ 13 On very similar facts, we have previously found that an officer articulated sufficient facts to constitute reasonable suspicion for a pat-down. In Wilson, immediately after the officer stopped and pulled behind the defendant, he observed him "looking into his rear view and side mirrors and his "shoulders and stuff" were moving around." 927 A.2d at 284. The defendant's "suspicious gestures and movements, in conjunction with the fact that he placed his hands inside his coat pocket as if he were reaching for something, could lead Officer Gunter to reasonably conclude that his safety was in jeopardy." Id. at 284-85. See also Commonwealth v. Mack, 953 A.2d 587 (Pa. Super. 2008) (the officer could

9

have reasonably concluded that his safety was in jeopardy and so was justified in subjecting the defendant to a Terry frisk based on the defendant's "reaching movements in the vehicle while the officer approached," coupled with the time of day, the defendant's nervousness, and his lack of proper identification); Commonwealth v. Murray, 936 A.2d 76, 77 (Pa. Super. 2007) (the officer articulated sufficient facts to lead him to conclude the defendant could have been armed and dangerous due to his "excessive movement inside the vehicle," in addition to the hour of night and the fact that the neighborhood was a sell-known narcotics area).

¶ 14 Examining the totality of the circumstances, the suspicious gestures and movements of Parker could have caused the officer to reasonably conclude, in light of his experience, that Parker was armed and dangerous. We "must be guided by common sense concerns that give preference to the safety of the police officer during an encounter with a suspect where circumstances indicate that the suspect may have, or may be reaching for, a weapon." Stevenson, 894 A.2d at 772 (citation omitted). Accordingly the police officer did not unlawfully search Parker.

(Doc. 2-2 at pp. 5-8.)

In relying on several Pennsylvania state cases, he contends that Officer Kennedy falls short of articulating specific facts from which he could reasonably infer that Parker was armed and dangerous and that he exceeded "the boundaries of a "frisk" by manipulating his pants and pockets after realizing no weapon existed on [his] person" and realizing he was not armed and dangerous. (Doc. 2, at 4-5, 6.) He argues that "the officer's continued exploration of the [his] pocket after having concluded that it contained no weapon was unrelated to "the sole justification of the search [under Terry:] . . . the protection of the police officer and others nearby," and therefore, "amounted to the sort of evidentiary search that Terry expressly refused to authorize." (Doc. 2, at 6, citing Terry, 392 U.S. at 26, 29.) He argues that "[t]he arresting officer in this case made no claim that he suspected the object in

10

my pants to be a weapon. Once no weapon was detected the pat down should have been concluded." (Doc. 2, at 6.)

After the stop, Officer Kennedy observed Parker's shoulders dipping from side to side as if he was retrieving something; he was reaching down to his right and to his left which lead him to conclude that "my safety in my opinion was in jeopardy, because I didn't know if he was trying top get a weapon or not. I wanted to be sure he did not possess a weapon, so we were both safe on the traffic stop." (Doc. 2-2 at pp. 6-8.) As noted above, the state court determined that after "[e]xamining the totality of the circumstances, the suspicious gestures and movements of Parker could have caused the officer to reasonably conclude, in light of the experience, that Parker was armed and dangerous" and that the court "must be guided by common sense concerns that give preference to the safety of the police officer during an encounter with a suspect where circumstances indicate that the suspect may have, or may be reaching for a weapon. [citation omitted]. Accordingly, the police officer did not unlawfully search Parker." (Doc. 2-2, at 9.)

Parker also cites to a concurring opinion of Justice Stevens in the case of Texas v. Brown, 460 U.S. 730, 748 (1983) for the proposition that the courts should be sensitive to officers who enlarge a search authorization, furnished by a warrant or an exigency, into a general warrant to rummage and seize at will. However, that case has no relevance to the facts present here because it is specific to the search and seizure of an item or items in plain view.

In order to establish that a state court determination is contrary to, or involves an unreasonable application of, clearly established federal law "petitioner must demonstrate that precedent *requires* the contrary outcome." Matteo, 171 F.3d at 888 (emphasis in original). Parker fails to establish that the state court unreasonably applied the principles of Terry to the facts of his case.

B.  **Pat-down Search**

Parker's third issue is whether the contraband in his pocket was immediately apparent such that the arresting officer had authority to seize it. (Doc. 1, at 8.) The superior court addressed the issue as follows:

> ¶ 15 During the pat-down, after it became apparent to the officer that Parker did not have any weapons on him, the officer lawfully seized the objects from Parker under the plain feel doctrine. At the suppression hearing, the police officer explained:
>
>> As I patted him down, I felt two plastic bags in his cargo pocket with some hard rigid objects, that based on my training and experience, I believed became apparent to me these objects were consistent with the size, shape, and texture of packaged cocaine.
>
> N.T., 7/10/07, at 6-7. Unlike Commonwealth v. Stackfield, 651 A.2d 558 (Pa. Super. 1994), which Parker relies on, the officer here was able to immediately identify the object he felt as packaged crack cocaine before he reached into Parker's pocket and looked at the plastic bags. In Stackfield, "it was only after the officer reached in and seized the baggies from appellant's pockets that the contents in two of the baggies were identified, by sight, as a green, leafy material that subsequently field-tested positive for marijuana." Id. at 562. Similarly, in Wilson, the police officer could not identify the object he felt on the defendant during the pat-down. The police officer only discovered it was crack cocaine after he saw it in the defendant's pocket. The officer admitted that he "thought it was a weapon of some sort" when he looked in the defendant's pocket, and so its criminal character was not immediately apparent. Wilson, 927 A.2d at 285.

12

> Accordingly, the officer's actions in this case did not go beyond the scope of the plain feel doctrine because he stated that he knew Parker had contraband in his pocket from conducting the pat-down alone.

(Doc. 2-2 at pp. 8-9.)

Parker disputes the state court decision that the officer's actions were within the scope of the plain feel doctrine. It is his contention that "only where the incriminating nature of the contraband is immediately apparent can an officer seize non-threatening contraband during a pat-down for weapons." (Doc. 2, at 8.) The applicable Supreme Court standards hold differently. It is well-established that an officer is permitted to seize contraband found during a lawful Terry frisk. See Minnesota v. Dickerson, 508 U.S. 366 (1993). As the Third Circuit explained in United States v. Yamba, 506 F.3d 251 (3d Cir.2007), the Dickerson decision essentially endorsed the "plain feel" doctrine by permitting officers to seize contraband they find while properly frisking for weapons. However, the search must be for weapons, and the contraband must be identified in the course of searching for weapons, to be admissible under the plain feel doctrine. "The proper question under Dickerson, therefore, is not the immediacy and certainty with which an officer knows an object to be contraband or the amount of manipulation required to acquire that knowledge, but rather what the officer believes the object is by the time he concludes it is not a weapon." Id. at 259. Therefore, if an officer, given his or her training and experience, develops probable cause to believe that an object is contraband before eliminating the possibility that the object is a weapon, the officer may perform a more intrusive search and, if the object is indeed contraband, may

13

seize it. See id. "It is not key whether [the officer] was certain that the object in [the defendant's] pocket was contraband by the time he knew it not to be a weapon; what is key is whether [the officer] had probable cause to believe that it was and this occurred at the same moment or before he determined that [the defendant] had no gun on his person." Id. at 260. An officer can further manipulate an object after forming the belief it is not a weapon to confirm that it is indeed contraband, so long as probable cause existed prior to ruling out the possibility of the object being a weapon. See id.

Here, in concluding that the contraband was seized in accordance with the plain feel doctrine, the state court relied on the Officer Kennedy's testimony that "[a]s I patted him down, I felt two plastic bags in his cargo pocket with some hard rigid objects, that based on my training and experiences, I believed became apparent to me these objects were consistent with the size, shape, and texture of packaged cocaine." It is clear that the state court decision was in accord with governing federal precedent. In order to establish that a state court determination is contrary to, or involves an unreasonable application of, clearly established federal law "petitioner must demonstrate that precedent *requires* the contrary outcome." Matteo, 171 F.3d at 888 (emphasis in original). Parker fails to meet his burden. This claim is therefore without merit.

C.  **State Courts' Consideration of Parker's Arguments**

In his amended petition, Parker attempts to advance a catch-all argument that the state courts failed to consider his arguments when presenting his Fourth Amendment claims.

14

(Doc. 25.) However, it is clear from our review of the record and our independent consideration of the constitutional claims presented in this petition, that the state court thoroughly considered each claim and properly relied on governing United States Supreme Court precedent. Because each of Parker's claims was fully and fairly adjudicated in the state court, he is not entitled to relief on this claim.

IV. <u>Conclusion</u>

For the reasons set forth above, the petition for writ of habeas corpus will be denied on the merits.

An appropriate order follows.

V. <u>Certificate of appealability</u>

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability ("COA"), an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254. A COA may issue only if the applicant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." <u>Miller-El v. Cockrell</u>, 537 U.S. 322 (2003). Here, jurists of reason would not disagree with the resolution of this case or find that the issues presented should proceed any further. Accordingly, no COA will issue.

BY THE COURT:

/s/ James M. Munley
JUDGE JAMES M. MUNLEY
United States District Court

Dated: October 26, 2010

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WENDELL LAMONT PARKER, | : | CIVIL NO. 3:CV-09-0722 |
| Petitioner | : | |
| | : | (Judge Munley) |
| v. | : | |
| | : | |
| THOMAS CORBETT, | : | |
| Respondent | : | |

:::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## ORDER

AND NOW, to wit, this __ day of October 2010, upon consideration of the petition and amended petition for writ of habeas corpus (Docs.1, 25), and for the reasons set forth in the foregoing memorandum, it is hereby ORDERED that:

1. The petition and amended petition for writ of habeas corpus (Docs. 1, 25), are DENIED based upon petitioner's failure to demonstrate that the applicable state court decisions were either contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States. 28 U.S.C. § 2254(d)(1).

2. The Clerk of Court is directed to CLOSE this case.

3. There is no basis for the issuance of a certificate of appealabilty. See 28 U.S.C. § 2253(c).

BY THE COURT:

JUDGE JAMES M. MUNLEY
United States District Court